IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Dorin Muntean, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:13-1151-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Discover Financial Services and | ) | |
| Weltman, Weinberg & Reis Co., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Discover Financial Services' ("Discover") motion to dismiss Dorin Muntean's ("Muntean") claims against Discover pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to allege a plausible claim of relief. After thorough review, the court grants Discover's motion.

## I. Factual and Procedural Background

According to the complaint, in November 2007, Discover issued a credit card to Domar Management, Inc. ("Domar Management"). (Compl. ¶ 4, ECF No. 1-1.) In September 2009, Discover contacted Muntean and informed him that the credit account had an outstanding balance of $19,000 and that he had authorized the card and was personally liable for it. (Id. ¶ 6.) Muntean immediately informed Discover that he did not authorize the card and never agreed to be personally liable for the charges.[1] (Id. ¶ 7.)

---

[1]Neither party provides insight to the relationship between Domar Management and Muntean.

Subsequently, Muntean filed a police report with the Wixom, Michigan Police Department on March 2, 2010, alleging that his identity had been stolen. The Wixom Police Department's investigation concluded that a third party opened the account.[2] Muntean continued to dispute his liability for the debt, and Discover filed suit against Muntean in Michigan state court on June 2, 2011. (Id. ¶ 19.) Discover voluntarily dismissed the lawsuit in September 2011. (Discover Mot. Dismiss 2, ECF No. 10.) Although the lawsuit was dismissed, Muntean alleges that he was unable to obtain a loan in February 2012 because his credit report indicated that he had a delinquent credit account with Discover. (Compl. ¶ 24, ECF No. 1-1.)

In the complaint, Muntean alleges that Discover violated the (1) Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., (2) South Carolina Financial Identity Fraud and Identity Theft Protection Act ("SC Identity Act"), S.C. Code Ann. § 37-20-110, et seq., and (3) South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq. (Id. ¶¶ 29-35, 42-53.) Muntean claims that he never opened the credit account with Discover nor agreed to be liable for any outstanding balances. (Id. ¶ 5.) Muntean further claims that the information on his credit report relating to the Discover credit account is false and disputed. (Id. ¶¶ 16, 26-27.) Discover filed the instant motion to dismiss Muntean's claims against it. Muntean has not filed a response to Discover's motion to dismiss. The matter is now ripe for review.

---

[2]The parties contest whether Muntean gave the third party permission to open the account. Muntean alleges that he "did not authorize [the third party] to open or use the [credit card] nor did [he] agree to be personally liable on the account." (Compl. ¶ 10, ECF No. 1-1.) However, Discover alleges that the Wixom Police Department's investigation concluded "that the account was opened by a third party with [Muntean's] permission." (Discover Mot. Dismiss 2, ECF No. 10.)

## II. Discussion of the Law

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id.

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

3

## B.  FCRA

The FCRA imposes distinct duties on three types of entities:  consumer reporting

agencies ("CRA"), users of consumer credit reports, and furnishers of information to CRAs.

Wenner v. Bank of Am., N.A., 637 F. Supp. 2d 944, 951 (D. Kan. 2009).  Furnishers have two

duties under the FCRA.  Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 149 (4th Cir.

2008).  First, they have a general obligation to report accurate and complete information to

CRAs.  15 U.S.C. § 1681s-2(a).  Second, they have a duty to verify the sufficiency and accuracy

of reported information upon receipt of notice of a dispute from a CRA.  § 1681s-2(b).

Muntean does not specify which parts of the FCRA he relies upon.  It appears, however,

that Muntean is relying on 15 U.S.C. §§ 1681s-2(a) and (b).  The complaint broadly alleges that

Discover failed to comply with the FCRA by furnishing inaccurate information to CRAs.

(Compl. ¶ 31, ECF No. 1-1.)  Further, Muntean alleges that he notified Discover that the

information it provided to CRAs was inaccurate, but Discover has failed to act upon and

investigate Muntean's complaint of the allegedly false credit information.  (Id. ¶¶ 7, 16, 31.)

Discover maintains that these factual allegations are insufficient to state a plausible claim of

relief under the FCRA.

As an initial matter, no private right of action exists for a violation of § 1681s-2(a) of the

FCRA.  Instead, these duties can only be enforced by government officials.  See Barberan v.

Nationpoint, 706 F. Supp. 2d 408, 427 (S.D.N.Y. 2010) ("No private right of action exists for

violations of § 1681s-2(a) because this provision 'shall be enforced exclusively' by government

officials." (quoting 15 U.S.C. § 1681s-2(d))).  Muntean, therefore, is unable to allege a FCRA

claim against Discover pursuant to § 1681s-2(a).  <u>Saunders</u>, 526 F.3d at 149 (finding that the "FCRA explicitly bars private suits for violations of § 1681s-2(a)").

Discover next argues that Muntean's FCRA claim under § 1681s-2(b) should be dismissed because the complaint lacks any allegation that Muntean informed a CRA that Discover furnished false information, as required by § 1681s-2(b).  See <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009) (explaining that a furnisher's duties under § 1681s-2(b) "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)").  A plaintiff states a plausible claim for relief under § 1681s-2(b) by alleging that (1) the plaintiff notified a CRA that the defendant furnished false information; and (2) the defendant-furnisher refused to investigate or correct the false report after learning of the alleged error in violation of the FCRA.  <u>Lang v. TCF Nat'l Bank</u>, No. 07-1415, 2007 WL 2752360, at *2 (7th Cir. Sept. 21, 2007) (unpublished).  Muntean has failed to allege that he informed a CRA of the false information on his credit report.  Thus, "subsection (b) is not applicable to [Muntean] because this portion of the FCRA imposes a duty on [Discover] only after receiving notice that [Muntean] filed a dispute with a credit reporting agency, challenging the accuracy of a credit report."  <u>Beattie v. Nations Credit Fin. Servs. Corp.</u>, No. 02-1744, 2003 WL 21480586, at *5 (4th Cir. June 27, 2003) (unpublished) (citing 15 U.S.C. § 1681i(a)(2)).  Therefore, Muntean's claim pursuant to the FCRA fails to state a plausible claim for relief.

### C.  SC Identity Act

Muntean alleges that Discover violated the SC Identity Act, S.C. Code Ann. § 37-20-170, by failing to provide CRAs with accurate information relating to the disputed credit

5

account at issue. (Compl. ¶¶ 43-47, ECF No. 1-1.) However, "the FCRA's preemption

provision, 15 U.S.C. § 1681t(b)(1)(F), preempts this claim, regardless of its underlying merits."

Ross v. F.D.I.C., 625 F.3d 808, 812 (4th Cir. 2010).[3]

   Section 1681t provides that "[n]o requirement or prohibition may be imposed under the

laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of

this title." 15 U.S.C. § 1681t(b)(1)(F). "Section 1681s-2 describes the responsibilities of those

who report credit information to CRAs." Ross, 625 F.3d at 813. Specifically,

> [s]ection 1681s-2(a) explains the duty of furnishers of information to provide
> accurate information, which includes correcting any errors in reporting. Section
> 1681s-2(b) contains the duties of furnishers of information after receiving notice
> . . . of a dispute with regard to the completeness or accuracy of any information
> provided by a person to a consumer reporting agency. These duties include
> conducting an investigation into the dispute and correcting any errors discovered
> with the CRAs.

---

[3]Further, a strong argument exists that the SC Identity Act only regulates CRAs, and does
not proscribe the behavior of furnishers of information such as Discover. Section 37-20-170
states:

> (A) If a consumer disputes the accuracy of an item in the consumer's records with
> a consumer reporting agency, the consumer may give notice in writing to the
> consumer reporting agency specifying in what manner the report is inaccurate and
> the consumer reporting agency shall reinvestigate the inaccuracy at no charge to
> the consumer, provide the consumer with sufficient evidence that the information
> is true and accurate information as it relates to that consumer, and record the
> current status of the disputed information. The consumer reporting agency shall
> provide forms for that notice and shall assist a consumer in preparing the notice
> when requested.
> (B) Within thirty days after receiving a notice of inaccuracy, a consumer reporting
> agency shall deny or admit the inaccuracy to the consumer in writing. If the
> consumer reporting agency denies the inaccuracy, the consumer reporting agency
> shall include the [certain relevant] information with the written results of the
> reinvestigation[.]

§ 37-20-170. Thus, the proscriptions included in § 37-20-170 only mention CRAs and does not
regulate furnishers of information.

Id. (internal citations and quotation marks omitted).

In analyzing the preemptive effect of § 1681t, district courts have used three different approaches. The first is the total preemption approach, which holds that § 1681t preempts all state laws – statutory and common law – that affect the duties of furnishers of information to credit reporting agencies. The second, the temporal approach, construes § 1681t as preempting all state statutory and common laws affecting the duties of furnishers of information after they have received notice that the information they are furnishing may be incorrect or has been contested by the consumer. The third, the statutory approach, interprets § 1681t to preempt only state statutory laws and have no effect on state common law tort causes of action. In line with Barnhill v. Bank of America, N.A., 378 F. Supp. 2d 696 (D.S.C. 2005), the court will follow the statutory approach. See Barnhill, 378 F. Supp. 2d at 703-04 (holding that the statutory approach is most appropriate, relying on the "canons of statutory instruction," "the plain language of § 1681t," and the "support for the statutory approach among district courts within the United States Court of Appeals for the Fourth Circuit" and two Fourth Circuit opinions, Beattie v. Nations Credit Fin. Servs. Corp., No. 02-1744, 2003 WL 21213703, at *1 (4th Cir. May 27, 2003) (unpublished), and Beattie v. Nations Credit Fin. Servs. Corp., No. 02-1744, 2003 WL 21480586, at *1 (4th Cir. June 27, 2003) (unpublished)).

Muntean's SC Identity Act claim "runs into the teeth of the FCRA preemption provision." Id. Muntean alleges that Discover "fail[ed] to provide [accurate credit] information" to CRAs, causing "inaccurate information" to remain on his credit report. (Compl. ¶¶ 45, 47, ECF No. 1-1.) Muntean's allegations directly relate to Discover's obligation to provide accurate credit information to CRAs. See e.g., Shaunfield v. Bank of America, Civil

Action No. 3:12-CV-3859-B, 2013 WL 1846885, at *2 (N.D. Tex. Apr. 24, 2013) (unpublished) ("Section 1681t therefore preempts state law to the extent it seeks to impose additional requirements on entities . . . related to conduct that is a violation of § 1681s-2."). "Because [Muntean's SC Identity Act] claim seeks to use § [37-20-170] as a 'requirement or prohibition' under [South] Carolina law concerning 'subject matter regulated under section 1681s-2,' it is squarely preempted by the plain language of the FCRA." Ross, 625 F.3d 813 (quoting 15 U.S.C. § 1681t(b)(1)(F)).

### D. SCUTPA

Muntean additionally alleges that Discover violated the SCUTPA, S.C. Code Ann. § 39-5-10, et seq. (Compl. ¶ 50, ECF No. 1-1.) In his bare allegations, Muntean claims:

> Defendants have engaged in unfair deceptive practices, including seeking payment for a debt that is not owed, refusing to provide proof of such debt on demand, false reporting to credit agencies, agreeing to close accounts and then reopening them under a different number, falsely confirming the debt to credit reporting agencies, threatening litigation, bringing litigation in the wrong jurisdiction, opening accounts in the Plaintiff's name without requiring identification and signature, practicing law without a license, and other deceptive and unfair acts.

(Compl. ¶ 50, ECF No. 1-1.)

Muntean's claims that Discover falsely reported and confirmed debt to CRAs under the SCUTPA are similar to his SC Identity Act claim, both "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). As previously discussed, the FCRA generally preempts the use of state statutory law as a "requirement or prohibition" concerning "subject matter regulated under section 1681s-2." Id.; Joiner v. Revco Discount Drug Centers, Inc., 467 F. Supp. 2d 508, 518 (W.D.N.C. 2006).

8

Moreover, Muntean's claim in its entirety consists of mere "labels and conclusions" and is "a formulaic recitation of the elements of a cause of action," which does not "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. In order to establish a SCUTPA violation, a plaintiff must demonstrate

> (1) that the defendant has engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 293, 291 (4th Cir. 1998). "A trade practice is unfair when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is deceptive when it has a tendency to deceive." Ethox Chemical, LLC v. Coca-Cola Co., No. 6-12-cv-01682-TMC, 2013 WL 41001, at *2 (D.S.C. Jan. 3, 2013) (unpublished) (internal quotation marks omitted). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." However, "[c]onduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." Id. (internal quotation marks omitted).

"If the complaint alleges–directly or indirectly–each of the elements of a viable legal theory, the plaintiff should have the opportunity to prove that claim." Moore v. Chex Systems, Inc., Civil Action No. 3:09-CV-198, 2011 WL 1584115, at *1 (E.D. Va. Apr. 27, 2011) (unpublished). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 550 U.S. at 678. Muntean fails to sufficiently allege each requisite element of a SCUTPA claim. In regard to public interest, the complaint merely states: "Defendants continue to do business and there is the danger that these

actions will be repeated." (Compl. ¶ 51, ECF No. 1-1.) "These conclusory allegations, without supportive facts, are not enough to survive [Discover's] motion to dismiss." <u>Ethox Chemical</u>, 2013 WL 41001, at *3. Muntean "fails to allege any specific procedures or business practices that create the potential for repetition." <u>Id.</u> Further, Muntean does not demonstrate how the outcome of the case will affect the broader public, as opposed to only the parties to the case. <u>See</u> <u>Id.</u> Therefore, Muntean does not sufficiently plead his SCUTPA claim to survive Discover's motion to dismiss.

Based on the foregoing, Muntean's claims against Discover are dismissed.

It is therefore

**ORDERED** that Discover's motion to dismiss, docket number 9, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
June 12, 2013